(160 App. Div. 123)

McCAUGHAN v. HOME SAVINGS BANK OF CITY OF ALBANY.

(Supreme Court, Appellate Division, Third Department. January 7, 1914.)

1. MASTER AND SERVANT (§ 119*)—INJURIES TO SERVANT—APPLIANCES.

A lead wire furnished by the owner of a building for use in the cellar by its janitor was a part of the plant of the owner, and, as such, it was bound to use reasonable care to see that it was free from defects, even though another lead wire which was perfect was also furnished.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 210; Dec. Dig. § 119.*]

2. MASTER AND SERVANT (§ 278*)—INJURIES TO SERVANT—EVIDENCE—SUFFICIENCY.

In an action for the wrongful death of a servant, electrocuted by reason of defects in a lead wire furnished by the master for use in its cellar, evidence held sufficient to show that the death was caused by the negligence of the master.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

Appeal from Trial Term, Albany County.

Action by Elizabeth McCaughan, as administratrix of James B. Mc-Caughan, deceased, against the Home Savings Bank of the City of Albany. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Charles Irving Oliver, of Albany (Murray G. Jenkins, of New York City, of counsel), for appellant.

William E. Woollard, of Albany, for respondent.

WOODWARD, J. Plaintiff is the widow of James B. McCaughan, and brings this action as administratrix of the goods, chattels, etc., of the decedent, who is alleged to have met his death through the negligence of the defendant in maintaining and supplying to the decedent, for use in his employment as janitor, a certain lead wire, carrying a bulb for illuminating purposes. Decedent had been employed about three weeks in his work, and on the morning of October 19, 1912, at about 6 o'clock, he was informed by one of the charwomen employed in the building that there was a leak in one of the water pipes in the cellar. He investigated and found the floor of the cellar covered with water. He called a plumber, and, while waiting for the plumber to appear, he attached the lead wire to the electric system, and with the bulb in his hand was engaged in removing some coal to uncover the leaking pipe, when he received an electric shock which appears to have rendered him incapable of action, though he called to the charwoman and asked her to turn off the current. This woman appears to have been ignorant of the switching apparatus, and did not turn off the current. She ran out and procured help; but, when the policeman and plumber entered the cellar the decedent had passed beyond recovery, and the policeman who attempted to lift him up testifies that he received an "awful shock." The case was submitted to the jury upon

the theory, supported by evidence, that there was a defect in the lead wire at the point where it connected with the bulb, and that this defect enabled the current to escape into the hand of the decedent, producing paralysis which prevented him letting loose, and that during the period between the calling for help and the arrival of the policeman he was receiving the current which resulted in producing his death. The jury found in favor of the plaintiff in the sum of $6,000, and the defendant appeals from the judgment, and from an order denying a motion for a new trial upon the minutes.

[1] There was some conflict of evidence as to whether the lead wire which produced the injury was furnished by the defendant for the use of the decedent; it being claimed that there was another lead wire properly equipped which was already lighted and which might have been used; but we are of the opinion that the jury were justified in finding that this particular lead wire was there for any purpose which the janitor might feel called upon to use it in the discharge of his duties, and that the mere fact that he might have used some other lead wire does not operate to relieve the defendant from liability. This lead wire was undoubtedly a part of the plant of the defendant, and as such it was the duty of the master under the law as it now stands to use reasonable care to see that it was free from defects endangering the lives and limbs of those employed in the premises.

[2] We are of the opinion that the evidence fully justified the jury in finding that decedent came to his death by means of an electric shock conveyed to him through this defective lead wire, and, while the testimony was not clear that there was a current of sufficient strength to kill under ordinary circumstances, the fact remains that the man was killed, and if this result was produced by a defect in the ways, works, machinery, or plant of the defendant, which it was the duty of the defendant to guard against by reasonable inspection and care, there is a liability for which the latter must answer.

It seems to be practically conceded that there was error in the trial court permitting plaintiff's attorney to introduce in evidence a portion of a statement previously made by his own witness, and which was calculated to discredit her testimony as given upon the trial in answer to his questions; but, after examining the evidence, we are persuaded that this could not have been of any particular importance in this case, and, while the practice should not be countenanced, the error is not such as to justify a reversal of this judgment.

The judgment and order appealed from should be affirmed, with costs. All concur.